UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

KATHY LYNN CONNORS,          :
    Plaintiff,                :         CIVIL ACTION NO. 20-3950-RAL
                             :
v.                           :
                             :
KILOLO KIJAKAZI,             :
Commissioner of Social Security,[1] :


RICHARD A. LLORET
U.S. Magistrate Judge                                October 4, 2021

### MEMORANDUM OPINION

Plaintiff, Kathy Lynn Connors, claims she was disabled under the definition of disability in the Social Security Act.[2] Her claim focuses on a seven-week period between August 12, 2014 and September 30, 2014, the last date she qualified as insured under the Social Security Act. R. at 11, 13. August 12, 2014 was both her last day of work as a paramedic (R. at 258) and the alleged onset date of her disability. *Id*. Ms. Connors claims that her disability arose from a work-related knee injury that happened on June 19, 2012, and that the effects of the injury were compounded by her obesity. R. at 13. Her claim was denied by the state agency that administers social security claims in Pennsylvania. R. at 92. Ms. Connors appealed to an Administrative Law Judge ("ALJ"), who denied her claim in an opinion dated October 23, 2019. R. at 8. Plaintiff then

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Ms. Kijakazi should be substituted for the former Commissioner of Social Security, Andrew Saul, as the defendant in this action. No further action need be taken to continue this suit pursuant to section 205(g) of the Social Security Act. 42 U.S.C. § 405(g). (Social Security disability actions "survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office").
[2] 42 U.S.C. §§ 416(i) and 423(d); *see* 20 C.F.R. § 404.315(a)(1).

appealed to the Appeals Council, who rejected her claim, making the ALJ's decision final. R. at 1. Ms. Connors filed a complaint in this court seeking relief under 42 U.S.C. § 405(g). Doc. No. 1.

The parties consented to my jurisdiction (Doc. No. 6) and have briefed the appeal. Doc. No. 14 ("Pl. Br.") and 15 ("Comm. Br."). Because I conclude that the ALJ's decision was supported by substantial evidence and free from legal error, I will deny the appeal and enter judgment for the defendant.

## STANDARD OF REVIEW

In reviewing an ALJ's disability determination, I must "determine whether it is supported by substantial evidence." *Newell v. Commissioner of Social Security*, 347 F.3d 541, 545 (3d Cir. 2003) (citing to *Richardson v. Perales,* 402 U.S. 389, 390 (1971)); *see also* 42 U.S.C. § 405(g). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. (quoting *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938))). Substantial evidence is "more than a mere scintilla of evidence but may be less than a preponderance." *Id*. (citation omitted). I may not weigh the evidence or substitute my own conclusions for those of the ALJ. *Chandler v. Comm'r of Soc. Sec*., 667 F.3d 356, 359 (3d Cir. 2011).

Nevertheless, I exercise "plenary review over questions of law." *Newell,* 347 F.3d at 545 (citation omitted). I must determine whether the ALJ applied the proper legal standards in reaching the decision. *See Coria v. Heckler*, 750 F.2d 245, 247 (3d Cir. 1984). Accordingly, I can overturn an ALJ's decision based on a harmful legal error even when I find that the decision is supported by substantial evidence. *Payton v. Barnhart*, 416 F. Supp. 2d 385, 387 (E.D. Pa. 2006) (citing *Friedberg v. Schweiker*,

721 F.2d 445, 447 (3d Cir. 1983)); *Bowen v. Commissioner of Social Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

## DISCUSSION

Plaintiff raises two issues. First, she argues that the ALJ erred by finding that Ms. Connors could be on her feet for a full eight-hour workday. Pl. Br. at 1. The consequence of this error, the argument goes, is that the ALJ's residual functional capacity ("RFC") determination that Ms. Connors was capable of doing "light"[3] work was flawed. *Id*. at 4, 5; *see* R. at 14-18. The ALJ's RFC determination was the foundation of the vocational expert's testimony that Ms. Connors was able to perform jobs available in the national economy. R. at 81-84 (hearing transcript). The ALJ relied on this testimony to find that, although Ms. Connors was unable to perform her past job as a paramedic, she could nevertheless perform light work with some restrictions (R. at 14), and that there were jobs in the national economy she could still perform. R. at 18-19. Therefore, the ALJ found that Ms. Connors did not meet the disability standard under the SSA. R. at 18-19; *see* Pl. Br. at 5-6.

---

[3] *See Hall v. Berryhill*, 2017 WL 4222628, at *3 (D. Del. 2017):
> An RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent schedule. SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). Under SSA policy, light work requires the ability to occasionally lift twenty pounds and frequently lift ten pounds. SSR 83-10, 1983 WL 31251, at *5. Light work encompasses two categories of standing and walking requirements. *Id*. The first category requires "standing or walking, off or on, for a total of approximately 6 hours of an 8-hour workday." *Id*. at *6. The second category "involves sitting most of the time but with some pushing and pulling of arm-hand or leg-foot controls, which requires greater exertion than sedentary work ...." *Id* at *5.

Second, Ms. Connors argues that the ALJ was wrong to rely on a dearth of evidence from her treating orthopedic surgeon, because the surgeon's deposition was included in the record. Pl. Br. at 1, 13.

### A. Substantial evidence supported the ALJ's determination that Ms. Connors was not disabled.

Ms. Connors had to prove that she was disabled before September 30, 2014, the last date she was insured for disability. *See* 20 C.F.R. § 404.315(a)(1) (instructing that a claimant must be "insured for disability" to be found eligible for DIB). Plaintiff needed to prove that she could not perform *any* substantial gainful activity in the national economy during the brief period between August 12, 2014 and the last date she was insured for disability, September 30, 2014. R. at 19, Finding No. 11; *see* 42 U.S.C. § 423(d)(1)(A). It was not enough to prove that she could no longer work as a paramedic, her former vocation.

After engaging in the usual five-step disability evaluation process,[4] the ALJ found at step five that Ms. Connors was not disabled during the seven weeks between August 12, 2014 and September 30, 2014. R. at 19, Finding No. 11. The ALJ explained why: there was no record evidence of treatment for right knee pain for the period starting a year before her alleged onset date and extending for a year and a half after her date last insured. *See* R. at 1071 (noting rehabilitation was discontinued in February of 2013); R. at 1073 (noting treatment with Dr. Frederick, an orthopedic surgeon, through August 14,

---

[4] The five-step disability evaluation process is described in *Hess v. Commissioner Social Security*, 931 F.3d 198, 201-02 (3d Cir. 2019). "At step five, the ALJ examines whether the claimant 'can make an adjustment to other work[,]' considering his '[RFC,] … age, education, and work experience[.]" *Id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). That examination typically involves 'one or more hypothetical questions posed by the ALJ to [a] vocational expert.' *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984). If the claimant can make an adjustment to other work, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If he cannot, he is disabled." *Id.* at 202.

4

2013, a year before onset); R. at 816 (rehabilitation visit on June 5, 2016, a year and eight months after the date of last insured). R. at 14-18. With the aid of a vocational expert's testimony, the ALJ concluded that Ms. Connors was unable to perform her previous work as a paramedic. R. at 18, Finding. No. 6. The ALJ also found that Ms. Connors had the residual functional capacity to perform light work, with certain restrictions, which left her able to perform jobs in the national economy. R. at 14, Finding No. 5 (RFC); R. at 18-19, Finding No. 10 (vocational assessment). The ALJ found that the objective medical evidence in the record did not support Plaintiff's allegations of disabling pain in her right knee during the period August 12, 2014 to September 30, 2014. R. at 16.

The record showed that Ms. Connors treated with an orthopedist after her work-related right knee injury in January 2012. R. at 1071. She eventually had arthroscopic surgery in August 2012. R. at 15, 1070-73. After surgery, Ms. Connors went to physical therapy through February 2013, and saw her orthopedist through August 2013. *Id*. There was no indication that she had any complications or received any significant follow up treatment after that time. *Id*. Before her alleged onset date, Ms. Connors' right knee was not mentioned in treatment notes as the cause of any significant functional deficits. R. at 443-656. From August of 2013 until September 30, 2014, her date last insured, there are no treatment records showing that Ms. Connors sought *any* treatment for her allegedly disabling right knee pain. Examinations in 2015 suggested some dysfunction, but also no muscle atrophy, good strength, and the ability to walk without a limp. R. at 16-17.

When Ms. Connors sought treatment for asthma in 2013 and 2014 she did not complain of knee pain. R. at 541, 622-23, 631, 648, 656. In September of 2014, during

5

the seven weeks between her alleged onset date and her date last insured, she was treated in a hospital for pneumonia. R. at 511-13. At admission Ms. Connors reported that she was independent in her activities of daily living and she had no leg pain or swelling. R. at 514. During her stay, she walked to assess her pulmonary functioning, and there are no documented complaints of knee pain. *See* R. at 528 ("no pain" when examined). The day before her discharge, Ms. Connors felt well with no mention of complaints of debilitating knee pain. R. at 560.

The first treatment notes following Ms. Connors' date last insured, when she sought treatment for asthma in March 2015, indicate that Ms. Connors presented with "no leg pain/leg swelling," R. at 453, and no complaints of leg pain or dysfunction. R. at 469, 473, 476, 485-86. There were no treatment notes in the record related to knee pain until February 2016, a year and a half after Ms. Connors' date last insured, and those complaints related to her *left* knee. R. at 790-91.

There were medical examinations in 2015 in connection with Ms. Connors' pension claim, but that is different from treatment records. As the ALJ correctly noted, "[t]here are no treatment records from the claimant's primary care provider, orthopedic specialist, or surgeon to support the claimant's allegations of disability." R. at 16. I add that there are no expert opinions in the record opining that Ms. Connors had any physical disability within the crucial period, August 12, 2014 to September 30, 2014. Ms. Connors and her attorney either elected not to submit medical evidence directed to the crucial period, or they had none to submit. In either event the result is the same: the ALJ was confronted with a deafening silence when it came to the seven weeks between August 12, 2014 and September 30, 2014. That silence did not carry Ms. Connors'

6

burden to prove a disabling condition that prevented her from doing any work available in the national economy.

Ms. Connors insists that the burden of proof at step five of the evaluation process is on the Commissioner. Pl. Br. at 7. As a general proposition, she is right. *Ramirez v. Barnhart*, 372 F.3d 546, 551 (3d Cir. 2004). But Ms. Connors is wrong to assume that this means the Commissioner bears the burden of proving her residual functional capacity, which is the point of her mentioning the burden of proof. Pl. Br. at 8 ("the record does not contain substantial, competent evidence that she was capable of performing the 2 jobs identified by the Vocational Counselor."). As *Ramirez* makes clear, the RFC evaluation takes place at step four. 372 F.3d at 551 (at step four "the SSA assesses whether the claimant has the 'residual functional capacity' to perform his previous work."). At step four, the burden of proof is on the claimant. *Id.* The justification for placing the burden of proof on plaintiff, at steps one through four, is that "it is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so." *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

This statutory scheme makes sense: the claimant has the burden of demonstrating physical limitations on her ability to do work, at steps one through four, while the Commissioner has the burden of demonstrating that there are jobs in the national economy that the claimant can still perform, despite the physical limitations established at step four. It makes no sense to argue that the Commissioner, at step five, must carry the burden of proving Ms. Connors is physically capable of doing work, which would amount to re-proving the physical limitations just established at step four,

under a flip-flopped burden of proof. There is no warrant for such a puzzling requirement in the statute, the regulations, or the case law.

The result of this allocation of the burden of proof is that Ms. Connors bears the burden of demonstrating the extent to which her right knee condition left her unable to meet the physical demands of doing work during August 12, 2014 to September 30, 2014. The Commissioner does not bear the burden of proving her residual functional capacity.

The ALJ found that the minimal evidence of treatment during 2014 and 2015 failed to support Plaintiff's allegations of disability due to knee pain. R. at 15-16. That was a reasonable conclusion. A reasonable fact finder could expect that an individual with disabling knee pain would engage in persistent attempts to obtain pain relief, or to remedy the underlying cause of the pain. *See Mason v. Shalala*, 994 F.2d 1058, 1068 (3d Cir. 1993) ("We do not quarrel with the ALJ's entitlement to draw an inference adverse to appellant from the fact that appellant has not sought medical assistance to relieve his professed pain."); *see* SSR 16-3p;[5] *Myrick v. Berryhill*, No. CV 17-515, 2018 WL 762406, at *5 (E.D. Pa. Feb. 7, 2018) (finding the ALJ reasonably cited "minimal, basic treatment" for knee pain was a reasonable basis to find allegations unsupported).

The ALJ found the objective medical evidence in the record did not support Ms. Connors' allegations of disability. R. at 16-17. There were no abnormalities noted regarding her right knee during her admission for pneumonia in September of 2014. R.

---

[5] "Persistent attempts to obtain relief of symptoms, such as increasing dosages and changing medications, trying a variety of treatments, referrals to specialists, or changing treatment sources may be an indication that an individual's symptoms are a source of distress and may show that they are intense and persistent. In contrast, if the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints . . . we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record."

8

at 528-569. Ms. Connors had no lower leg edema in January 2014, R. at 624, and had normal examinations of her extremities and gait in March 2015. R. at 468, 503.

The ALJ noted that Marilyn V. Howarth, M.D., signed a statement in July 2014 that Plaintiff was limited to walking or standing only three hours a day. R. at 17, 1068. Dr. Howarth's statement was made in connection with Ms. Connors' claim for pension benefits under Pennsylvania law. R. at 1068. Generally, a medical report rendered in such a hearing has limited significance in a Social Security appeal. The standards for determining disability under the SSA are different than in a pension program. *See Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 832–34 (2003) (cautioning about the differences between Social Security and ERISA pension plans); *Houser v. Alcoa, Inc. Long Term Disability Plan*, 2010 WL 5058310, at *14 (W.D. Pa. 2010) (same); *Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999) (worker's compensation program standards differ from Social Security standards).

The SSA's regulations require that an ALJ, when asked to rely on a medical opinion, must assess whether a medical report is supportable and consistent with other medical evidence. *See* 20 C.F.R. § 404.1520c(c)(1), (2). Dr. Howarth had no doctor-patient relationship with Ms. Connors. *Id.* at § 404.1520c(3). The ALJ explained that Dr. Howarth's opinion was "not supported by any physical examination findings or treatment notes." R. at 17. *See* 20 C.F.R. § 404.1520c(c)(1). That was a reasonable conclusion, supported by substantial evidence.

Plaintiff testified that that Dr. Howarth examined her, R. at 63, but Dr. Howarth did not provide any report documenting this examination and did not cite any examination findings as support for her assessment. *Id.* at 1068-69. Dr. Howarth's report is bare bones and conclusory, consisting of a two-page "check the box" form with

9

minimal reasoning and support for her conclusions. R. at 1068-69. "Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best." *Mason*, 994 F.2d at 1065. The ALJ reasonably found Dr. Howarth's opinion lacked support.

The ALJ noted that the treatment records from Ms. Connors' hospital stay in September 2014 were not consistent with Dr. Howarth's report because there were no indications of ongoing issues with Plaintiff's right knee during September of 2014. R. 17-18; *see* 20 C.F.R. § 404.1520c(c)(2) (requiring the ALJ to evaluate an opinion's consistency with other evidence). Ms. Connors argues the ALJ should have ignored the evidence from the hospital because it "doesn't even mention [her] right knee." Pl. Br. at 11. But the ALJ's inference from the lack of evidence was appropriate. If Plaintiff had knee pain in September of 2014 that disabled her from standing and walking, one would expect the subject to come up during an extended hospital stay. The ALJ reasonably found that this evidence was inconsistent with Dr. Howarth's conclusory and unsupported opinion.

As part of Ms. Connors' board of pension process, two doctors examined Ms. Connors in June and July 2015, nine to 10 months after her date last insured. Dr. Weinerman, who examined Ms. Connors in June of 2015, limited his opinion to a finding that Plaintiff could not "return to her duties as a Fire Service Paramedic." R. at 1074. He offered no explicit judgment on Plaintiff's ability to stand or walk. *Id*. at 1073-1074. He stated that he was "in agreement" with Dr. Frieman's orthopedic opinion. *Id*. at 1074. Ms. Connors claims that "Dr. Weinerman noted that the Plaintiff was having difficulty with prolonged standing and prolonged walking with difficulty walking more than thirty (30) minutes." Pl. Br. at 10-11. That is incorrect. Dr. Weinerman simply

10

recounted Plaintiff's allegations about her limitations. R. at 1071-72. A physician's recapitulation of a patient's complaints does not turn those complaints into objective medical evidence.

Dr. Frieman, who examined Ms. Connors in July of 2015, did not find that Plaintiff was unable to stand or walk. R. at 1076. Dr. Frieman only stated that Plaintiff could not "run, squat, climb in and out of truck or high vehicle, kneel, and . . . perform usual activities of a paramedic such as kneeling to perform CPR or squatting to pick up a stretcher or climb in and out of a high vehicle[,]" physical functions required to work as a paramedic. *Id*. Dr. Frieman also noted unremarkable physical findings: Ms. Connors could "walk without a limp or lift." R. at 1076. "Her calf measurements were equal bilaterally. She has a full extension and equal flexion of both knees with pain on the right, none on the left. . . her thigh and calf measurements are equal bilaterally suggesting that she has good muscle strength in both legs." *Id*. In the end, both Dr. Frieman and Dr. Weinerman provided opinion evidence that, as of mid-2015, Ms. Connors could not perform her former duties as a paramedic. *See* Pl. Br. at 10. They did not opine about her ability to stand or walk during August and September of 2014. The fact that examining physicians in a pension eligibility proceeding concluded that Ms. Connors could not do her former job as a paramedic is understandable. Being a paramedic is a very demanding job. That she could not do her job as a paramedic does not mean Ms. Connors is disabled under the Social Security Act.

The ALJ reasonably evaluated the existing evidence of record and concluded the evidence did not support a finding of disability. That was not error.

11

**B. The ALJ did not err by disregarding the orthopedic surgeon's testimony.**

Ms. Connors claims the ALJ erred by disregarding the deposition testimony of Dr. Frederick, her orthopedic surgeon. Pl. Br. at 5. I disagree. An ALJ has no obligation to mention every piece of evidence in the record before her. *Rodriguez v. Berryhill*, 2019 WL 11234378, at *8 (M.D. Pa. 2019). When evidence does not contradict the ALJ's findings, the ALJ has no duty to discuss it explicitly. *Rivera v. Commissioner of Social Sec.*, 164 Fed.Appx. 260, 263 (3d Cir. 2006) (not precedential).

Dr. Frederick's deposition testimony does not contradict the ALJ's fact-finding. Dr. Frederick's deposition occurred in March of 2015 in connection with a lawsuit by Ms. Connors against Hahnemann University Hospital and others. R. at 138. Dr. Frederick testified that he saw Plaintiff in August 2013 (a year before the relevant period), and he then did not see her again at any point prior to Plaintiff's date last insured. *Id.* at 162, 172, 174 (describing the August 2013 visit as the "second to last visit" before the final December 2014 visit). Thus, Dr. Frederick did not see Ms. Connors at any point between her alleged date of onset, in August of 2014, and her date last insured, September 30, 2014.

The ALJ found that Ms. Connors treated with Dr. Frederick after her work-related injury in 2012. R. at 15. Dr. Frederick did not testify that Ms. Connors was unable to walk or stand. His testimony focused largely on causation: the link between the injury in 2012 and Ms. Connors' knee problems. *Id.* at 169. Dr. Frederick's testimony did not contradict the ALJ's factfinding: the ALJ found that Ms. Connors suffered from degenerative joint disease of her right knee, caused in part by a fall at work in 2012. *Id.* at 13, 15. The substance of Dr. Frederick's testimony was cumulative of Dr. Weinerman's

12

report, which laid out Plaintiff's treatment history, including her treatment by Dr. Frederick, and tied her injury in 2012 to her knee problems. R. at 1071-73. The ALJ's failure to explicitly mention Dr. Frederick's deposition testimony in the opinion was not error.

The ALJ found that that "[t]he record contains no evidence that the claimant was prescribed a cane, or that a cane was medically necessary during the relevant period." R. at 17. Ms. Connors takes issue with this finding, pointing to Dr. Frederick's deposition testimony. Pl. Br. at 13. But Ms. Connors gets it wrong. Dr. Frederick testified about Ms. Connors using a cane when referencing a September 19, 2012 treatment visit. *Id.* (citing R. at 161). This was less than a month after Ms. Connors' arthroscopic knee surgery, and nearly two years before her alleged date of onset in August of 2014. What is more, Dr. Frederick testified that Ms. Connors discontinued her use of the cane as of September 19, 2012. R. at 161. Thus, Dr. Frederick's testimony supports the ALJ's finding that there was no evidence that the cane was medically necessary during the "relevant period" – August 12, 2014 to September 30, 2014. *Id*. at 17.

Nor does Dr. Frederick's deposition testimony contradict the fact, central to the ALJ's decision, that treatment records during 2014-2015 were entirely missing from the administrative record. While there are references to treatment records in Dr. Frederick's deposition, Ms. Connors did not make these treatment notes part of the record before the ALJ. Instead, she told the ALJ that the record was complete without them. R. at 52 (hearing transcript). The ALJ was justified in noting the absence of treatment records during the year before and after the crucial time frame of August-September 2014. *See id.*, at 16.

13

The ALJ specifically addressed Ms. Connors' allegations about standing and walking, R. at 14, and found that the allegations lacked support. The ALJ reasonably found that Ms. Connors had not established that she was unable to do any job in the national economy during the brief seven-week window between her date of onset and her date last insured, given the lack of treatment history before, during, and after the relevant period.

## CONCLUSION

Because Ms. Connors has failed to demonstrate that the ALJ's determination was unsupported by substantial evidence, or that the ALJ made a legal error, her appeal fails. I will therefore affirm the Agency decision and enter judgment against Ms. Connors.

BY THE COURT:


*s/Richard A. Lloret*
**RICHARD A. LLORET**
**U.S. Magistrate Judge**